David W. Newman (USB #15901)
Assistant United States Trustee
Melinda P. Willden (USB #8533)
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone: (801) 524-5734
E-mail: David.W.Newman@usdoj.gov
        Melinda.Willden@usdoj.gov

Attorneys for Gregory M. Garvin
Acting United States Trustee, Region 19

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>VOBEV, LLC,<br><br>                Debtor. | Bankruptcy Case No. 24-26346<br><br>Chapter 11<br><br>Hon. Joel T. Marker |

## UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF ROPES & GRAY LLP AS ATTORNEYS FOR THE DEBTOR

The Acting United States Trustee, through counsel, objects to the Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Ropes & Gray LLP ("R&G") as Attorneys for the Debtor [Dkt. #14] ("Employment Application") because (1) R&G is a prepetition creditor of the bankruptcy estate and thus is not disinterested pursuant to 11 U.S.C. §§ 327(a) and 101(14); and (2) R&G's treatment of its prepetition retainer is out of compliance with the Utah Rules of Professional Conduct, and states as follows:

## I. **STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(a) and (b). This is a core proceeding arising under Title 11 and arising in a case under Title 11.

## II. **SUMMARY OF THE RELEVANT FACTS**

1. On December 9, 2024 ("Petition Date"), the Debtor filed a voluntary petition ("Petition") for relief under Chapter 11 of the Bankruptcy Code as case number 24-26346. Alan Boyko signed the Petition on behalf of the Debtor as its Chief Transformation Officer.

2. On the Petition Date, the Debtor filed the Declaration of Alan Boyko, Chief Transformation Officer of the Debtor ("Boyko Declaration") at Dkt. #23.

3. The Debtor's principal place of business is located in Salt Lake City, Utah.

4. The Debtor is an entity organized under the laws of the State of Utah.

5. On December 9, 2024, attorney Michael Johnson of Ray Quinney & Nebeker ("RQN") filed motions to admit R&G attorneys Gregg Galardi and Eric Schriesheim *pro hac vice.* The Court entered the orders approving their *pro hac vice* admission on December 10, 2024. *See* Dkt. #16, 18, 37 and 38.

6. The U.S. Trustee appointed an Unsecured Creditors Committee on December 19, 2024. *See* Dkt. #105.

7. On December 9, 2024, the Debtor filed the Employment Application and the Declaration of Gregg M. Galardi in support.

8. Based on the representations made in the Employment Application, it appears that the Debtor engaged R&G's services on or about March 21, 2024 and signed the Engagement

Letter on that date. The Engagement Letter states that New York law governs the terms

of the representation.

9. The Engagement Letter, attached as **Exhibit A**, contains the following language

regarding the retainer payments:

> In engagements of this sort the firm requests that the client deposits funds as an advance payment retainer with the firm. At the outset of the engagement, you agree to deposit $100,000 with the firm as an advance payment retainer. The advance payment retainer will be applied first to payment of charges for such items as photocopying, messengers, travel, etc., as more fully described above, and then to fees for services. No less frequently than monthly, we will bill you for fees and expenses, including any charges and fees in excess of the advance payment retainer. Upon issuing our invoice, we will immediately apply the advance payment retainer towards the amount of the invoice and you agree to remit payment in the full amount of the remaining balance after application of the retainer plus an amount sufficient to return the advance payment retainer to $100,000. In the event that your need for legal services increases or fees and expenses are expected to exceed $100,000, we will bill more frequently and may request an increase in the advance payment retainer that is sufficient to cover our expected fees and expenses during that period. In all circumstances, any remaining portion of amounts held as the advance payment retainer will be refundable to you at the conclusion of our representation, as more fully described below.

> You consent to our maintaining this advance payment retainer in a general account. If we deposited the payment in a client trust account, the funds would remain your property and may be subject to the claims of its creditors, thereby making it difficult for you to retain restructuring counsel. Accordingly, you acknowledge and agree to our depositing the advance payment retainer in our general account in order to, among other things, secure counsel in connection with our representation of you in a potential Chapter 11 filing. Consequently, upon our receipt of the advance payment retainer, the funds will become our property and you will have no interest in the funds other than a return of any amounts remaining after application of the advance payment retainer to expense and fees incurred.

> Upon the commencement of a bankruptcy case, any remaining balance of the advance payment retainer not applied to pay our pre-bankruptcy fees and expenses shall continue to remain with us, without any application to our fees and expenses incurred during the bankruptcy case. Upon final approval by a bankruptcy court of our final application for fees and expenses, any remaining

balance of the advance payment retainer will be applied to amounts due to us pursuant to such final fee application, with any remaining amount to be returned to you after such application. To the extent the advance payment retainer is insufficient to cover all amounts due and owing to us pursuant to an order approving our final fee application, such fees and expenses shall be promptly paid by you. Our allowed interim fees and expenses incurred during the bankruptcy case will be paid from the bankruptcy estate assets, pursuant to an order of a bankruptcy court in a Chapter 11 case." (Dkt. 14 at pp. 51 – 52)

10. The Employment Application at ¶ 27 summarized the payments received by R&G within ninety (90) days prior to the Petition Date. In the seven days leading up to the Petition Date, R&G invoiced a total of approximately $201,649.16 for services performed for the Debtor. During that same seven-day period, the Debtor[1] paid an additional $143,470.00 to R&G.

11. In the 90 days of payments summarized in the Employment Application, R&G invoiced the Debtor for approximately $613,899.76 and received $518,708.60 in payments.

12. On the Petition Date, the balance of the Advanced Payment Retainer Balance ("Retainer") was approximately $218,847.34.

13. The Employment Application states that R&G will issue a "Final Prepetition Bill Amount" that will reflect the "actual fees, charges, and disbursements incurred for the

---

[1] As noted in the Boyko Declaration at ¶ ¶ 13-22, the Debtor has relied on prepetition loans funded by prepetition lenders, many of which are affiliated with Ares Capital Corporation ("Ares"), and are using Ares as administrative agent for the loans. Entities affiliated with Ares are the stalking horse bidder in the sale transaction described in Bidding Procedures Motion filed at Dkt. #58. It is possible that the funds paid to R&G only flowed through the Debtor; the ultimate source of payment to R&G may be the same entities that are planning to purchase the Debtor's assets. The source of the retainer must be fully disclosed. *See In re Parklex Assocs., Inc.,* 435 B.R. 195, 210 (Bankr. S.D.N.Y. 2010) (admonishing a bankruptcy attorney and denying fees in part due to the attorney's failure to investigate the source of the retainer funds and failure to disclose the relationship between the ultimate source of the funds and the entity which made the actual payment to the attorney).

period prior to the Petition Date." This amount will be applied against the Retainer. If any funds remain, the Retainer will be held by R&G as a postpetition retainer to be applied against any final fee application of R&G. If the Final Prepetition Bill Amount exceeds the Retainer, then R&G will waive any claim against the retainer for the excess. *See* Employment Application at ¶ 28.

14. Based on information provided to the U.S. Trustee by R&G, the Final Prepetition Bill Amount is approximately $142,857.45. Deducting that amount from the existing Retainer of $218,847.34 leaves approximately $75,898.89 of unused Retainer.

15. The Proposed Order, filed at Dkt. #14 beginning on p.20, states: "To the extent that the Final Prepetition Bill Amount is less than the amount held as an Advanced Payment Retainer, Ropes & Gray may, without further order of the Court, deduct the amount of the Final Prepetition Bill Amount from the Advanced Payment Retainer and hold the full amount of the difference as a post-petition retainer to be applied against any fees and expenses approved by the Court in connection with Ropes & Gray's final fee application in this chapter 11 case."

## III. <u>ARGUMENT</u>

The purpose of 11 U.S.C. § 327 is to ensure that professionals fulfil their duty as a fiduciary of a bankruptcy estate. *See In re Black & White Stripes, LLC*, 623 B.R. 34, 50 (Bankr. S.D.N.Y. 2020) ("Courts, however, must take the requirements of section 327 seriously, as they ensure that a professional fulfils his or her duties in accordance with his or her fiduciary duties to the estate.") (*quoting In re Leslie Fay Cos.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994) ("The requirements of section 327 cannot be taken lightly, for they serve the important policy of

ensuring that all professionals appointed pursuant to [this section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.")).

No professional may be employed unless they are disinterested. 'Disinterested' is defined in 11 U.S.C. § 101(14) as a person who is not a creditor. A creditor is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A).

The Employment Application should be denied for the following reasons: (1) on the Petition Date, R&G held a prepetition claim against the Debtor and was therefore a creditor of the bankruptcy estate and thus is not disinterested; (2) R&G is out of compliance with the Utah Rules of Professional Conduct regarding client retainers.

**A.  R&G is a Creditor of the Bankruptcy Estate and Thus is Not Disinterested.**

On the Petition Date, and despite the Debtor's payment of $131,152 the day before the Petition Date, R&G still had approximately $142,857.45 in fees, charges, and disbursements that it had not yet invoiced and charged against the Retainer. The payment for this work constitutes a claim which R&G has against the Debtor. More specifically, R&G holds a prepetition claim against the Debtor's equitable interest in the Retainer which is being held in R&G's bank account.

The Bankruptcy Code forbids a debtor from employing a creditor as an estate professional, and further defines "creditor" as an entity that has a claim against the debtor. "These provisions, taken together, unambiguously forbid a debtor in possession from retaining a

prepetition creditor to assist it in the execution of its Title 11 duties." *U.S. Tr. v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994). "A law firm which is a pre-petition creditor does not meet the 'disinterested person' criteria set forth in 11 U.S.C. § 101(13) and, therefore, is disqualified from representing a Chapter 11 debtor in possession." *In re Roberts*, 75 B.R. 402, 407 (D. Utah 1987); *see also In re Lackawanna Med. Grp., P.C.,* 323 B.R. 626, 633 (Bankr. M.D. Pa. 2004) (noting that a law firm seeking to be employed by a bankruptcy estate can avoid being a creditor by either waiving a prepetition claim, or by billing "the client for prepetition preparation on the date of filing and remov[ing] that amount of prepetition fees from the funds held in escrow. The balance on hand would be treated as a retainer for postpetition work.").

Ideally, R&G should have totaled up all prepetition fees, expenses, and other charges, and deducted them from the Advanced Payment Retainer before filing the Petition. It did not do so. Instead, R&G posits that, per New York law regarding advanced payment retainers, the Retainer belongs to R&G, not the Debtor. After deducting the Final Prepetition Bill Amount, R&G thus 'owes' the Debtor the remaining $75,989.90. Under this reasoning, the Debtor has a claim against R&G for the remaining Retainer.[2] Per the terms of the Engagement Agreement, R&G intends to retain this amount and apply it to fees awarded by the Court after R&G files a final fee application in this bankruptcy case.

"Property interests are created and defined by state law." *Butner v. U.S.*, 440 U.S. 48, 55 (1979). New York state law will thus determine if a retainer is property of the bankruptcy estate. However, the *Butner* Court acknowledged that a federal interest may influence the application of

---

[2] The Debtor has listed a professional retainer held by R&G in the amount of $141,820.18 on Schedule A/B, Part 2, Line 8.49. *See* Dkt. #116.

state law. "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.*

The existence of a claim, and the time at which it arose, against the Debtor's estate will be evaluated under federal bankruptcy law. In addition, the "federal interest" that prohibits creditors from being employed by a bankruptcy estate may influence the application of New York state law in this situation.

### 1. New York Advanced Payment Retainers

As the language in the Engagement Letter makes clear, the treatment of the Advanced Payment Retainer was designed solely to ensure that the funds would be out of reach of creditors.

> You consent to our maintaining this advance payment retainer in a general account. If we deposited the payment in a client trust account, the funds would remain your property and may be subject to the claims of its creditors, thereby making it difficult for you to retain restructuring counsel.

Employment Application at p.51/56. This reasoning is drawn from Ethics Opinion 816 authored by the New York State Bar Committee on Professional Ethics ("Ethics Opinion 816") which notes "An advance payment retainer … can also benefit the client, who may wish to hire counsel to defend the client from judgment creditors. If the lawyer deposited such a retainer in a client trust account, the funds would remain the property of the client and might be subject to claims of the client's creditors, thereby making it difficult for the client to retain counsel."[3] *Id.* at ¶ 9. A

---

[3] The U.S. Trustee notes that, while in general, ensuring a debtor can hire counsel is a noble goal, the Bankruptcy Code does not take an approving view of transfers made specifically to put funds out of the reach of creditors. *See, e.g.,* 11 U.S.C. § 727(a)(2).

copy of Ethics Opinion 816 is attached as **Exhibit B**. This opinion was offered in the context of

analyzing whether a retainer may be deposited into a law firm's operating account, or into a

client trust account, and which party would be entitled to any interest earned on the funds. Ethics

Opinion 816 does not address retainers in a bankruptcy context. In addition, the New York State

Bar Committee on Professional Ethics does not pass laws.

Advanced payment retainers are recognized as belonging to the recipient in New York

case law.

> Retainer agreements fall into three different categories: (1) classic retainers; (2)
> security retainers; and (3) advance payment retainers. A "classic" retainer secures
> an attorney's availability over a certain period of time as opposed to being
> compensation for services rendered. When a classic retainer is paid, the attorney
> earns the entire amount and the client retains no interest in the funds.
>
> …
>
> A "security" retainer is a payment made to an attorney to secure payment of fees
> for prospective services. The debtor retains an interest in the funds until services
> are rendered by the attorney. The attorney merely "holds" the funds until services
> are rendered, and is required to turn over any remaining balance to the debtor.
> Since the debtor retains an interest in the retainer, such a retainer is the property
> of the estate, and is subject to use by counsel upon compliance with §§ 329 and
> 330.
>
> The last type of retainer is the "advance payment" retainer. This type of retainer
> involves fees paid to an attorney for services to be rendered, but the payment
> passes to counsel upon remittance at which time the debtor relinquishes all
> interest in the monies, unless there is an express agreement for the payment to be
> held in a trust or escrow. Funds that are collected as advance retainers do not
> become property of the estate and are subject to the requirements of § 329 only.

*In re King*, 392 B.R. 62, 71 (Bankr. S.D.N.Y. 2008). An important factor in distinguishing a

security retainer from an advance payment retainer is whether the parties intended for ownership

of the funds to pass to the attorney at the time of the payment. *See id.* The default retainer in New

York is the advance payment retainer. Absent an agreement creating a security retainer, "advance payments may be treated as fees belonging to the attorney upon transfer." *In re Dewey & Leboeuf LLP*, 493 B.R. 421, 429 (Bankr. S.D.N.Y. 2013) (*citing In re King*, 392 B.R. 62 (Bankr. S.D.N.Y. 2008); *see also Ruberto v. DeFilippo*, 29 Misc.3d 1236(A), 913 N.Y.S.2d 889 (N.Y.Civ.Ct.2010).

However, the client retains an equitable interest in the advanced payment retainer until the services are performed and the money is earned. "Although the advance payment retainer is not client property, the client retains an interest in that portion of the retainer that is not yet earned by the lawyer. Furthermore, at the conclusion of the representation the lawyer must promptly return any portion of the advance payment retainer that is not earned." Ethics Opinion 816 at ¶ 8. These caveats are characteristics of a security retainer. The New York Bar Committee on Professional Ethics has admitted that "Our conclusion that legal fees paid in advance need not be considered client funds … is supported by some, albeit a minority, of the ethics committee opinions that have considered this question." Ethics Opinion 570 authored by the New York State Bar Committee on Professional Ethics ("Ethics Opinion 570") at p.5. A copy of Ethics Opinion 570 is attached as **Exhibit C**. Further "We recognize that our conclusion is contrary to the majority of opinions by other ethics committees that have addressed the issue, which would require that advance payments of legal fees be deposited in a client trust account and retained there until earned." *Id.*

Attributing some aspects of general security retainers to advance payment retainers leads to some confusion in the case law. "When an advance payment retainer is intended to be a general prepayment for future services, rather than a flat fee, it should be properly regarded as a

general security retainer, and any amounts earned[4] should be fully refundable to clients." *In re Level 8 Apparel LLC*, 2023 WL 2940489, at *19 (Bankr. S.D.N.Y. Apr. 13, 2023). In *Level 8 Apparel*, the chapter 11 bankruptcy counsel received a retainer, performed work on the case, and then the case was converted to one under chapter 7. The chapter 7 trustee sought turnover of the retainer paid to the chapter 11 attorney, alleging that it was property of the chapter 7 bankruptcy estate. The chapter 11 attorneys submitted the engagement letter into evidence, which identified the retainer as a "classic retainer," earned upon receipt and not subject to disgorgement or turnover. The court evaluated the question under New York law, citing *SEC v. Towers Fin. Corp.*, 1993 WL 276935, at *4 (S.D.N.Y. July 21, 1993) ("A prepetition retainer becomes property of the estate only when, under applicable state law, the debtor has an interest in the retainer at the time of filing."). While the engagement letter named the retainer a "classic retainer," further terms in the engagement letter described using the retainer as a security retainer, and the order initially approving the law firm's employment treated the retainer as a security retainer. *See Level 8 Apparel¸* 2018 WL 2940489 at *21. The court found that the retainer was a security retainer and was thus property of the bankruptcy estate on the petition date. *See id.*

Advance payment retainers were characterized as being held by the lawyer in a 'constructive trust' in *Ruberto v. DeFlippo*, 913 N.Y.S.2d 889 (N.Y. Civ. Ct. 2010). In *Ruberto*, a client paid an advance payment retainer to a lawyer who did not do the promised work and then filed bankruptcy. When the client sought a return of the advance payment retainer, the lawyer

---

[4] It appears that the word "not" was omitted from this sentence. Based on the sentences immediately following, which reiterate that funds not earned should be refundable to the client, the sentence should read: "any amounts NOT earned should be fully refundable."

argued that whatever debt he might owe to the client had been discharged in his bankruptcy case. In rejecting this argument, the court stated that, "Defendant was not entitled to the monies paid him by this client. It was never his money. He never earned the fee. Because defendant did not establish that any legal services were performed, the money remained an asset of the claimant client." *Id.* at 892. The court gave the lawyer the burden to establish that legal services were performed and, presumably, what the fees would be. As the lawyer in this situation provided no statement or accounting, the presumption was that no work had been done and none of the retainer belonged to him.

A security retainer remains the property of the client until the fees are earned and applied by the attorney. The property rights in an advance payment retainer are split, with the attorney gaining legal title to the funds and the right to commingle them with the attorney's general operating funds, and the equitable interest in the funds being retained by the client. In *In re Dewey & Leboeuf LLP*, 493 B.R. 421 (Bankr. S.D.N.Y. 2013), a client paid a large retainer to a law firm. Years later, when the law firm filed bankruptcy, the former client sued to recover its retainer. Neither party had a complete copy of the engagement agreement, and so the nature of the retainer could not be determined by the contract. And because the law firm had never applied the retainer funds to work done for the client, the conduct of the parties provided no clues. While denying the motion for summary judgment, the court provided guidance for the parties on some of the legal issues. "Under New York law, if the Retainer is a security retainer," then it would not belong to the law firm and therefore not be part of the law firm's bankruptcy estate. *Id.* at 430. "The issues are more difficult if the Retainer is an advanced payment retainer." *Id.* The court referred to Ethics Opinion 816 and concluded that the law firm lawfully commingled the

retainer funds with its own funds. The former client argued that the law firm had no equitable interest in the retainer under 11 U.S.C. § 541(d), holding only legal title and not an equitable interest. The court dismissed this reasoning with a cryptic statement that Section 541(d) would not apply because the retainer funds were lawfully commingled. *Id.* at 431. The court concluded that it did not have enough evidence to define the nature of the retainer.

When the Debtor filed bankruptcy, its bankruptcy estate included "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Per Ethics Opinion 816 and New York case law, the Debtor had an equitable interest in the Retainer on the Petition Date, and that equitable interest is thus part of the bankruptcy estate. R&G's Final Prepetition Bill makes a prepetition claim on an interest held by the bankruptcy estate, and is thus a creditor of the bankruptcy estate.

### 2. Prepetition Claims in Bankruptcy

"While state law determines the existence of a claim based on a cause of action, federal law determines when the claim arises for bankruptcy purposes." *In re Hassanally*, 208 B.R. 46, 50 (B.A.P. 9th Cir. 1997); *see also In re Ogden*, 314 F.3d 1190, 1200 (10th Cir. 2002) ("While federal law determines when claim arises for bankruptcy purposes, non-bankruptcy substantive law usually determines the existence of a claim.") (internal citations omitted); *In re Agway, Inc.*, 313 B.R. 31, 41 (Bankr. N.D.N.Y. 2004) ("[I]n bankruptcy cases, state law does not determine when a claim arises.").

A law firm's claim against a retainer arises when the legal services are performed. *See In re First Jersey Sec., Inc.*, 180 F.3d 504, 510–11 (3d Cir. 1999) (In deciding whether an antecedent debt for legal fees exists in the context of a preference action, the Third Court noted

that, "Courts which have considered this issue have concluded, consistent with the statutory definitions, that an antecedent debt owed by the debtor occurs when a right to payment arises— even if the claim is not fixed, liquidated, or matured. *See* 11 U.S.C. § 101(5)".). The claim for payment of legal fees thus arises when the legal services are performed.

R&G's claim arose prepetition, when the work was performed. The purpose of R&G's Final Prepetition Bill is to liquidate the amount of R&G's prepetition claim against the Debtor's equitable interest in the Retainer. By contract, R&G does not collect on its claim until it has issued an invoice. *See* Engagement Letter in Payment Section ("Upon issuing our invoice, we will immediately apply the advance payment retainer towards the amount of the invoice and you agree to remit payment in the full amount of the remaining balance after application of the retainer …"). The Final Prepetition Bill has not yet been offset against the Retainer.[5]

R&G is relying on an opinion of the New York Bar's Committee on Professional Ethics to allege that it is not a creditor of the bankruptcy estate, despite the fact that its prepetition work created a claim against the Debtor's equitable interest in the Retainer. In general, R&G's property rights in the Retainer should be defined by state law. However, *Butner*'s general rule is not absolute. While state law property interests do not need to be "analyzed differently simply because an interested party is involved in a bankruptcy proceeding," there is an exception if "some federal interest requires a different result" that justifies analyzing a property interest pursuant to that federal interest. *Butner v. United States*, 440 U.S. 48, 55 (1979).

Congress has clearly forbidden creditors from being employed under 11 U.S.C. § 327(a).

---

[5] Post-petition action to collect "a claim against the debtor that arose before the commencement of the case" violates the automatic stay. 11 U.S.C. § 362(a)(1).

A federal statute surely qualifies as a 'federal interest.' New York case law is scarce or non-existent on the topic of advance payment retainers held by bankruptcy lawyers being used to pay prepetition fees after a chapter 11 petition is filed.[6] The general rule for law firms who wish to be employed by the bankruptcy estate is to take steps to ensure that they are not prepetition creditors of the bankruptcy estate, either by waiving prepetition claims, or totaling up and deducting the value of prepetition work from an existing security retainer before the petition is filed. Allowing attorneys based in New York[7] to carve out a loophole from that general practice flies in the face of the requirement that bankruptcy laws be uniform and constitutes a 'federal interest' that justifies not deferring to state law[8] for purposes of evaluating whether proposed counsel is eligible for employment pursuant to 11 U.S.C. § 327(a).

---

[6] The U.S. Trustee found the practice mentioned in an order entered in *In re Bos. Generating, LLC*, 2010 WL 6982765, at *1 (Bankr. S.D.N.Y. July 22, 2010) (unpublished matter).

[7] *See* Brickman, *The Advance Fee Payment Dilemma: Should Payments Be Deposited to the Client Trust Account or to the General Office Account,* 10 Cardozo L.Rev. 647 (1989). According to the *Brickman* article, along with New York, the District of Columbia, Florida, Hawaii, Illinois, Maryland and Pennsylvania conclude that retainers may be treated as advance payment of fees, belonging to the attorney when transferred. 10 Cardozo L.Rev. at 655 n. 48. *Cited in In re D.L.I.C., Inc.*, 120 B.R. 348, 351 (Bankr. S.D.N.Y. 1990).

[8] The U.S. Trustee reiterates that the New York Bar Committee on Ethics is not a law-making body and that New York case law analyzing ownership of retainers in bankruptcy is scarce and not factually on point. *See generally In re Chatkhan*, 496 B.R. 687 (Bankr. E.D.N.Y. 2012) (An individual filed a pro se chapter 13 petition. After converting the case to chapter 11, she paid a retainer to an attorney. The court found that the attorney's failure to properly disclose the receipt of a retainer post-petition, and then using the retainer to pay post-petition legal fees without filing a fee application was grounds for denying all fees); *and In re D.L.I.C., Inc.*, 120 B.R. 348, 350 (Bankr. S.D.N.Y. 1990) (A bankruptcy attorney received a prepetition retainer before filing a chapter 11 case for the Debtor. After the case was converted to chapter 7, creditors of the debtor sought a ruling that the retainer was property of the bankruptcy estate. The court noted that the attorney did not file a fee application, had not used the retainer, and the creditors provided no evidence whether the retainer was intended to be a security retainer or advance payment retainer. The creditors' motion was denied.).

## B. Utah Rules of Professional Conduct Retainers

In Utah, the only type of advanced payment retainer recognized is a flat fee payment. All other retainers are, by default, security retainers which continue to belong to the client until and unless the attorney earns the fees. The Utah Rules of Professional Conduct require a lawyer to "deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." UCJA 13-1.15(c).

Mr. Galardi and Mr. Schriesheim from R&G have both been admitted *pro hac vice* to practice before the Utah Bankruptcy Court in this case. Attorneys admitted *pro hac vice* pursuant to Local Rule 2090-1 "must comply with all applicable rules of this court, including, without limitation, Local Rule 5005-1 (Filing Requirements), 5005-2 (Electronic Filing) and 9073-1 (Hearings); **and all applicants must also comply with DUCivR 83-1.1(d)(1).**" Local Rule 2090-1(c)(3) (emphasis added).

DUCivR 83-1.1(d)(1) requires an attorney admitted *pro hac vice* to comply with the Utah Rules of Professional Conduct ("URPC"). The URPC requires lawyers to "deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." URPC 13-1(c). The Utah Supreme Court has held that when clients are entitled to any unearned fees, Utah Rule of Professional Conduct 1.15 requires the unearned fee to be kept in an attorney trust account. *Office of Professional Conduct v. Bowen*, 500 P.3d 788, 803 (Utah 2021) ("The lawyer would be receiving a benefit— immediate compensation—without having earned it. We can understand why many attorneys would appreciate the opportunity to immediately deposit retainers into their operating accounts,

but we are currently persuaded that the client protection benefits of the current system outweigh the potential benefits to attorneys.").

The U.S. Trustee requests that R&G be ordered to maintain the Retainer in a client trust account, and based on conversations and emails, believes that R&G will be amenable to this request.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the U.S. Trustee respectfully requests that this Court enter an order denying the Employment Application, ordering R&G to hold the Retainer in a client trust account, and for any other relief that the court deems just and proper. In the alternative, the U.S. Trustee requests that the Court strike the paragraph from the Proposed Order that allows R&G to apply the Final Prepetition Bill Amount against the Retainer without further order of this Court.

Date: December 28, 2024

ACTING UNITED STATES TRUSTEE
Gregory M. Garvin

By: _/s/ Melinda P. Willden_
MELINDA P. WILLDEN
Attorney for the United States Trustee

## <u>CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (CM/ECF)</u>

I hereby certify that on December 28, 2024, I electronically filed the foregoing document with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users.

- **James W. Anderson**    jwa@clydesnow.com, gmortensen@clydesnow.com
- **Megan K Baker**    baker.megan@dorsey.com
- **Daniel B. Besikof**    dbesikof@lowenstein.com
- **Joseph M.R. Covey**    jcovey@parrbrown.com,
  calendar@parrbrown.com;lstumpf@parrbrown.com
- **Michael S. Etkin**    metkin@lowenstein.com
- **Gregg M. Galardi**    gregg.galardi@ropesgray.com,
  nova.alindogan@ropesgray.com;Eric.Schriesheim@ropesgray.com
- **Arnold L. Graff**    agraff@wrightlegal.net,
  bkudgeneralupdates@wrightlegal.net;jpowell@wrightlegal.net
- **Michael K. Green**    mike.k.green@gmail.com
- **Michael R. Johnson**    mjohnson@rqn.com,
  docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Melanie Jones-Cannon**    mjonescannon@rqn.com,
  docket@rqn.com;ecasaday@rqn.com
- **David H. Leigh**    dleigh@rqn.com, ASanchez@rqn.com;docket@rqn.com
- **Austin C Nate**    anate@rqn.com, docket@rqn.com;arollins@rqn.com
- **Bruce S. Nathan**    bnathan@lowenstein.com,
  elawler@lowenstein.com;mpapandea@lowenstein.com;cgauvin@lowenstein.com
- **Mark A. Nickel**    mnickel@grsm.com,
  sgomez@grsm.com,VLS_SLCSupport@grsm.com,asoto@grsm.com,mstevens@grsm.com
- **Christopher L. Perkins**    cperkins@eckertseamans.com
- **Mark C. Rose**    mrose@mbt-law.com, markcroselegal@gmail.com
- **Brian M. Rothschild**    brothschild@parsonsbehle.com,
  ecf@parsonsbehle.com;docket@parsonsbehle.com
- **Jeffrey Weston Shields**    jshields@rqn.com,
  5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- **Landon S. Troester**    lst@clydesnow.com, rcondos@clydesnow.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**    waterman.steven@dorsey.com,
  bingham.karen@dorsey.com,steven-waterman-9367@ecf.pacerpro.com
- **Melinda Willden tr**    melinda.willden@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

**<u>CERTIFICATE OF SERVICE BY MAIL OR OTHER MEANS</u>**

**Mail Service to all Parties in Interest: First-class mail, postage pre-paid, addressed to all parties who do not receive electronic service as set forth herein listed on the Official Court Mailing Matrix dated December 28, 2024  attached hereto:**

NONE

Date: December 28, 2024

/s/   *Melinda P. Willden*





**ROPES & GRAY LLP**
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

March 21, 2024

Gregg M. Galardi
T +1 212 596 9139
gregg.galardi@ropesgray.com

Vobev, LLC
5454 W 150 S
Salt Lake City, UT 84104

Attention:  Alan J. Carr, Director

Dear Mr. Carr:

We appreciate being asked to represent Vobev, LLC (the "Client," "you" or the "Company").  Our experience has been that it is mutually beneficial to set forth, at the outset of our representation, the terms of our engagement.  That is the purpose of this letter.

<u>Engagement</u>

As counsel to the Company, we will represent you in connection with your consideration of strategic alternatives, subject to the resolution of any conflicts of interest (the "Matter").  The scope and nature of this representation may be enlarged in the future, but only as you and we may jointly agree.  The terms of this engagement letter, including those contained under the heading "Conflicts of Interest," will apply to all matters for which you retain us unless otherwise agreed in writing.

We will apprise you if the need arises for you to engage local counsel to provide us and you with advice  on questions of local law and local practice as the Matter might require.  While such engagement would not create an attorney-client relationship between us and such local counsel, by signing this letter, you hereby authorize our firm to communicate and share with such local counsel certain confidential information regarding the Matter.

Customarily, each client of the firm is served by one or more principal lawyer contacts.  The principal lawyers should be persons in whom you have confidence and with whom you enjoy working.  You are free to request a change of one or more principal lawyers at any time.  Your principal lawyers will be myself and Ryan Preston Dahl, who may be reached at 1.212.596.9139 and 1-212-596-9144 respectively.  Subject to the supervisory role of the principal lawyers, work on the Matter, or parts of it, may be performed by other lawyers and legal assistants in the firm.  This may be done for the purpose of involving lawyers or legal assistants with special expertise in a given area or for the purpose of providing services on the most efficient and timely basis.

ROPES & GRAY LLP

- 2 -                                                                March 21, 2024

<u>Fees</u>

Generally, our fees for professional services in connection with this engagement are based on the hours worked by Ropes & Gray LLP professionals and the hourly rates in effect at the time services are rendered.  In some cases, our fees may vary based on factors such as the complexity of the legal issues involved, time limitations that are beyond our control and the results of the representation. Associates' and law clerks' hourly billing rates are set by class without regard to the status of bar memberships of junior lawyers.  Our fees are determined net of any withholdings, deductions or payments that you or we may be required to make in respect of any taxes or duties, including, without limitation, taxes in the nature of "value added taxes," sales taxes, or taxes imposed upon gross receipts that we might be required to pay (but excluding taxes payable by us with respect to our net income by reason of our having an office in the jurisdiction imposing the tax).

We will charge for all time spent in representing the Company's interests, including, by way of illustration, telephone and office conferences with you and your representatives, consultants (if any), opposing counsel, and others; conferences among our legal and paralegal personnel; factual investigation; legal research; responding to your requests for us to provide information to your auditors in connection with reviews or audits of financial statements; drafting letters and other documents; and travel. We may use temporary contract staff to perform certain tasks on your engagement and will bill for that time at the rate that corresponds to the rate for Ropes & Gray LLP personnel providing a similar level of service.

In addition to our fees, there may be other charges for items incident to the performance of our legal services, such as photocopying, couriers, travel expenses, local counsel, specialized computer applications such as computerized legal research, and filing fees.  Our policy is to pass through these charges simply to recover our costs without any mark-up.  For certain of these items, particularly those that involve significant technology and/or support services such as imaging and storing electronic data and documents and the use of specialized software for legal research and data processing, we are sometimes able to reduce costs by contracting with vendors to purchase a quantity of service over time that is beyond the needs of any single client.  In those instances, we may bill you at a reduced per unit rate that does not fully reflect the quantity discounts we ultimately obtain.  Unless special arrangements are made, the fees, expenses and charges of others (such as experts, investigators, local counsel and consultants) and other large disbursements will not be paid by us, but will be the sole responsibility of, and billed directly to, the Client.

The rates of our lawyers and legal assistants are reviewed and adjusted from time to time, usually at least once a year on a firm-wide basis, to reflect current levels of legal experience, changes in overhead costs, and other factors.  Our time recording increment is in tenths of an hour.

Although we may from time to time, at the Client's request, furnish estimates of legal fees and other charges that we anticipate will be incurred, these estimates are by their nature inexact and, therefore, the actual fees and charges ultimately payable may vary from such estimates.

ROPES & GRAY LLP

- 3 -                                                          March 21, 2024

If at any time we are asked to testify (by deposition or otherwise) or respond to a subpoena or other discovery request as a result of our representation of you, or if we must defend the confidentiality of your communications in any proceeding, you agree, subject to applicable law, to pay us for our time, calculated at the hourly rate at the time for the particular individuals involved, and for any associated charges, even if our representation of you has ended.

<u>Payment</u>

Our fees are based on the assumption of prompt payment. Consequently, unless other arrangements are made, fees for services and other charges generally will be billed monthly or bi-weekly and are payable as soon as practicable and no later than 14 days of receipt.

In engagements of this sort the firm requests that the client deposits funds as an advance payment retainer with the firm. At the outset of the engagement, you agree to deposit $100,000 with the firm as an advance payment retainer. The advance payment retainer will be applied first to payment of charges for such items as photocopying, messengers, travel, etc., as more fully described above, and then to fees for services. No less frequently than monthly, we will bill you for fees and expenses, including any charges and fees in excess of the advance payment retainer. Upon issuing our invoice, we will immediately apply the advance payment retainer towards the amount of the invoice and you agree to remit payment in the full amount of the remaining balance after application of the retainer plus an amount sufficient to return the advance payment retainer to $100,000. In the event that your need for legal services increases or fees and expenses are expected to exceed $100,000, we will bill more frequently and may request an increase in the advance payment retainer that is sufficient to cover our expected fees and expenses during that period. In all circumstances, any remaining portion of amounts held as the advance payment retainer will be refundable to you at the conclusion of our representation, as more fully described below.

You consent to our maintaining this advance payment retainer in a general account. If we deposited the payment in a client trust account, the funds would remain your property and may be subject to the claims of its creditors, thereby making it difficult for you to retain restructuring counsel. Accordingly, you acknowledge and agree to our depositing the advance payment retainer in our general account in order to, among other things, secure counsel in connection with our representation of you in a potential Chapter 11 filing. Consequently, upon our receipt of the advance payment retainer, the funds will become our property and you will have no interest in the funds other than a return of any amounts remaining after application of the advance payment retainer to expense and fees incurred.

Upon the commencement of a bankruptcy case, any remaining balance of the advance payment retainer not applied to pay our pre-bankruptcy fees and expenses shall continue to remain with us, without any application to our fees and expenses incurred during the bankruptcy case. Upon final approval by a bankruptcy court of our final application for fees and expenses, any remaining balance of the advance payment retainer will be applied to amounts due to us pursuant to such final

ROPES & GRAY LLP

- 4 -                                                          March 21, 2024

fee application, with any remaining amount to be returned to you after such application.  To the extent the advance payment retainer is insufficient to cover all amounts due and owing to us pursuant to an order approving our final fee application, such fees and expenses shall be promptly paid by you.  Our allowed interim fees and expenses incurred during the bankruptcy case will be paid from the bankruptcy estate assets, pursuant to an order of a bankruptcy court in a Chapter 11 case.

Documents and Files

We will maintain necessary documents relating to this matter in our client files.  At the conclusion of the matter (or earlier, if appropriate), it is your obligation to advise us as to which, if any, of the documents in our files you wish us to make available to you.  These documents will be delivered to you within a reasonable time after receipt of payment for outstanding fees and other charges, subject to applicable rules of attorney conduct.  We will retain any remaining documents in our files for a certain period of time and ultimately destroy them in accordance with our record retention program schedule then in effect.  Under our current policy, unfiled emails sent or received by Ropes & Gray LLP are generally not retained after 60 days from the date of transmission or receipt.  With the exception of certain original paper documents, such as official or certified documents, original signed documents, and other documents that you have told us may be of legal or evidentiary significance as original documents, you agree that we may discard paper copies of documents and maintain our files electronically.

E-mail Communication

We recommend that all e-mail communication between us be encrypted.  Encryption can help avoid the risks attendant to communication by e-mail, which is capable of being intercepted by others.  Our systems are configured to send and receive encrypted e-mail by default, and we would be happy to work with you if you choose to configure your systems to communicate in an encrypted format.  If that is not feasible or you choose not to do so, you consent to the use of unencrypted e-mail in our communications.

Conflicts of Interest

As you know, Ropes & Gray LLP is a large law firm with a national and international practice, with many existing clients and many new clients each year.  Because many of our clients interact with other clients in many different respects, we often are in a position to undertake new matters like this one only because another client has agreed to an advance waiver.  Accordingly, our representation of the Company is conditioned upon your agreement that you will not object to our representation in any matter of any other client or prospective client of our firm with interests directly adverse to yours or to those of any of your affiliates that we may in the future represent (such affiliates which become clients of the firm to be collectively referred to, with you, in this paragraph as "you"), including without limitation our representation of another such client in any business dealings,

ROPES & GRAY LLP

- 5 -                                                              March 21, 2024

negotiations, or disputes with you (including litigation, arbitration or other dispute resolution proceedings against you) provided that the matter in which we represent any party adverse to you is not substantially related to any matter in which we are representing or have represented you, and with the understanding that we will not disclose any confidential information we have received from you and will not use any such information on behalf of any other party.  This means, among other things, that we may obtain confidential information from other clients that might be of interest to you but which we cannot share with you.  You also agree that in auctions and other situations where you are seeking to acquire companies or investments, we may also represent other prospective purchasers.  You understand that by providing this advance waiver of conflicts, Ropes & Gray LLP may, as described in this paragraph, represent other clients and prospective clients adverse to you.

To facilitate our compliance with professional responsibility rules and to address internally our provision of legal services, it is sometimes necessary for firm lawyers to consult with in-house or outside counsel to the firm.  You agree that any such consultations related in any way to this representation will be deemed attorney-client privileged communications between us and our in-house or outside counsel.  Your consent in this regard applies even if the consultation might be considered adverse to your interests.  In that event and in jurisdictions that consider such consultations to constitute conflicts of interests, you consent to the consultation notwithstanding any conflict and agree that it may remain confidential and subject to the firm's attorney-client privilege.

As with any of the provisions of this engagement letter, you are of course free to consult with independent counsel concerning the terms of this section of this letter, and we advise you to do so.

Identity of Client

The client for this engagement is Vobev, LLC.  This engagement does not create an attorney-client relationship with any related persons or entities, such as parents, subsidiaries, affiliates, employees, officers, directors, shareholders, members or partners not expressly identified in the preceding sentence.

From time to time in developing our practice and recruiting personnel it is useful to identify representative clients and matters and to use client logos without, of course, divulging any confidential information.  This engagement letter will constitute your consent to such use and disclosure.

Termination

This engagement will end when we have completed our work on the matters for which you have engaged us, or when either of us informs the other that the representation has ended (including by transmittal of our final bill on those matters).  For purposes of clarity, you agree that we may consider our work on a matter for which you have engaged us to be completed no later than the date

ROPES & GRAY LLP

- 6 -                                                                                    March 21, 2024

which is 90 calendar days from the last date on which we performed any work on that matter.  We specifically reserve the right, consistent with applicable rules of professional conduct, to suspend or terminate work on behalf of the Client if our statements are not paid within 30 days after they are rendered.

<u>Discussion and Disputes</u>

We appreciate the opportunity to serve as your attorneys and anticipate a productive and harmonious relationship.  If, however, you become dissatisfied for any reason with our services or the fees charged, we encourage you to bring your concerns to our attention immediately.  On our side, if we perceive a problem with the representation, we will discuss it with you.  In our experience, most problems can and will be rectified through such communication.

In the unlikely event that a dispute should arise between us that cannot be resolved through communication and discussion, we both agree that, prior to instituting any formal proceeding, we will attempt to resolve the dispute through non-binding mediation, before a mediator who is agreed to by both parties.  In the event that we both are unable to agree upon a mediator, we both agree to submit our dispute for non-binding mediation to the American Arbitration Association ("AAA"), which will then appoint a mediator for us and the mediation shall be conducted pursuant to the AAA's rules.  We both agree that any such mediation will take place in Manhattan, New York and that we both will equally share the costs of mediation.  If, despite our efforts, mediation does not resolve the dispute, pursuant to the Fee Dispute Resolution Program established by Part 137 of the Rules of the Chief Administrator of the Courts of New York State, clients whom we represent in civil matters have the right to initiate arbitration of any dispute with our firm involving amounts between $1,000 and $50,000.

Subject to the preceding sentence, any action by either of us to resolve any dispute with respect to our services shall be brought exclusively in either the Supreme Court of the State of New York, County of New York or in the U.S. District Court for the Southern District of New York, and you consent to the jurisdiction of such Courts for that purpose and agree that each is a convenient forum.  New York law will govern the terms of our representation, as well as any dispute, claim or issue arising out of or relating to our representation.

<u>Limited Liability</u>

Ropes & Gray LLP is registered as a limited liability partnership under the laws of the State of Delaware.  Each lawyer in a registered limited liability partnership is personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or her while rendering professional services on behalf of the firm, but is not otherwise liable or accountable, directly or indirectly, for any debts, obligations or liabilities of Ropes & Gray LLP.

ROPES & GRAY LLP

- 7 -                                          March 21, 2024

<u>Miscellaneous</u>

Unless otherwise expressly agreed to in writing, the firm will not file Beneficial Ownership
Information Reports with the Financial Crimes Enforcement Network of the U.S. Treasury as may
be required under the Corporate Transparency Act ("CTA") for entities formed or registered in the
U.S. on your behalf, and the firm will not be responsible for notifying you of CTA-related reporting
requirements or for monitoring or updating such reporting.

Where London-based lawyers associated with Ropes & Gray International LLP perform legal
services for you, additional Terms of Business, which can be found at
https://www.ropesgray.com/en/footer-pages/terms-of-business, will apply to the performance of
such services.

Ropes & Gray LLP looks forward to maintaining its close and cooperative relationship with you.
We will rely on you to assist and cooperate with us as appropriate.  We anticipate that you will
disclose fully and accurately to us all facts that may be relevant to matters on which you engage us
or that we may otherwise reasonably request, and keep us apprised of developments relating to the
matters on which you engage us.

If the foregoing correctly reflects your understanding of the terms and conditions of our
representation, please so indicate by executing the enclosed copy of this letter in the space provided
below and returning it to me in the enclosed envelope.

ROPES & GRAY LLP

                                         - 8 -                              March 21, 2024

Please contact me if you have any questions.  We are pleased to have this opportunity to be of
service and to work with you.

                                        Very truly yours,

                                        Ropes & Gray LLP


                                By:  _____
                                        Gregg M. Galardi

**AGREED TO AND ACCEPTED:**

**Vobev, LLC**


By:  _____
        Alan J. Carr, Director



Exhibit B

# Ethics Opinion 816

10.25.2007

By Committee on Professional Ethics

**New York State Bar Association**

*Committee on Professional Ethics*

Opinion 816 (10/26/07)
**Topic:** Advance payment retainer; client trust account.
**Digest:** A lawyer may ethically accept an advance payment retainer, place such funds in the lawyer's own account, and retain any interest earned.  The Lawyer may require the client to forward an advance payment retainer to pay for final fees that accrue at the end of the relationship.
**Rules:** DR 2-106(C), DR 2-110(A); DR 9-102(A), (C).

## QUESTIONS

1.      May a lawyer ethically accept an advance payment retainer and place such funds in the lawyer's own account while retaining any interest earned from such amount?

2.      If so, may a lawyer request the client to forward an advance payment retainer to pay for final fees that accrue at the very end of the relationship, with interim fees billed out as they are performed?

## OPINION

3.      Recently, we have received inquiries regarding the continued validity of our opinion in N.Y. State 570 (1985), which addressed the ethical propriety of what is commonly known as an advance payment retainer.  An advance payment retainer is a sum provided by the client to the lawyer to cover payment of legal fees expected to be earned during the representation.  To the extent the fees advanced are not earned during the representation, the lawyer agrees to return them to the client.  This form of retainer should be distinguished from a general retainer, which is a sum paid to the lawyer for being available to the client.  A general retainer is earned upon receipt.[1]  The recent inquiries regarding advance payment retainers may stem from the fact that since we issued Opinion 570 in 1985, there have been several significant developments on the subject of retainer agreements and the language in DR 9-102 has been substantially amended.  Therefore, it is now appropriate to revisit the principles stated in N.Y. State 570.

4.      In N.Y. State 570 we concluded that fees paid to a lawyer in advance of services rendered are not necessarily client funds and need not be deposited in a client trust account.  Therefore, any interest earned on these fee advances may be retained by the lawyer.  The opinion cautioned, however, that the lawyer is obliged to return any portion of the fee advance that is not earned during the representation.[2]

5.      If the parties agree to treat advance payment of fees as the lawyer's own, the lawyer may not deposit the fee advances in a client trust account, as this would constitute impermissible commingling.[3]  "On the other hand, the lawyer may agree to treat advance payment of legal fees as client

funds and deposit them in a client trust account; in that event any interest earned on the funds while in the client trust account must be remitted to the client."[4]

6.      Since 1985, we have cited N.Y. State 570 on several occasions.[5]  N.Y. State 570 has also been cited with approval by the Appellate Division, Fourth Department and the New York City Bar ethics committee.[6]  The validity of such an advance payment retainer has also been recently recognized by the Supreme Court of Illinois.[7]

7.      In opinion 570, we noted that "it appears that the drafters of the Code of Professional Responsibility did not consider advance payments of fees to be client funds necessitating their deposit in a trust account."  Although DR 9-102 has been substantially amended since 1985, the changes do not affect the reasoning of that opinion.  DR 2-110(A)(3) requires a lawyer who withdraws from representing a client to "refund promptly any part of a fee paid in advance that has not been earned."  As we observed in Opinion 570, this provision does not require that the advance be deposited in a client trust account until earned.  This conclusion is supported by the language in DR 2-110(A), which still separately classifies fee advances and client property.  DR 2-110(A)(2) requires a lawyer planning to withdraw from representing a client to "deliver to the client all papers and property to which the client is entitled" while DR 2-110(A)(3) separately provides for the refund of any unearned "fee paid in advance."  In sum, the standards delineated in N.Y. State 570 for advance payment retainers are still valid today.

8.      We note that advance payment retainer agreements, like any other fee agreement between a lawyer and client, must be "fair, reasonable, and fully know and understood by the client."[8]  These agreements must also comply with other relevant provisions of the Code.  In this respect, we construe DR 9-102 to require the lawyer to maintain complete records of any advance payment retainer received and to render appropriate account to the client regarding the retainer.[9]  Although the advance payment retainer is not client property, the client retains an interest in that portion of the retainer that is not yet earned by the lawyer.  Furthermore, at the conclusion of the representation the lawyer must promptly return any portion of the advance payment retainer that is not earned.[10]  Finally, it would be inappropriate for a lawyer to negotiate a nonrefundable advance payment retainer with the client.[11]

9.      An advance payment retainer will obviously benefit the lawyer by helping to ensure that he or she will be paid for services rendered, at least to the extent of the advance.  This form of arrangement can also benefit the client, who may wish to hire counsel to defend the client from judgment creditors.  If the lawyer deposited such a retainer in a client trust account, the funds would remain the property of the client and might be subject to claims of the client's creditors, thereby making it difficult for the client to retain counsel.[12]  Therefore, it is imperative for a lawyer at the outset of the representation to discuss the advantages and disadvantages of advance payment retainers and to reach an agreement about the treatment of any such advances.  These agreements should be confirmed in writing in the engagement letter where one is required.[13]

10.     We also conclude that an attorney may request an advance payment retainer for final fees that accrue at the very end of the relationship, with interim fees billed out as they are performed.  While such an arrangement is permissible, it must comply with the standards outlined in *Jacobson* and our prior opinions.  If the advance payment retainer is intended to be payable only once specific services use performed, it must describe the services that it is intended to cover.  If the services outlined in the agreement are not provided, that portion of the advance payment retainer must be promptly returned to the client.[14]

## CONCLUSION

11.     A lawyer may ethically accept an advance payment retainer and need not place such funds in a client trust account.  If the advance payment retainer is placed in the lawyer's account, the lawyer may retain any interest earned from such amount.  A lawyer may request an advance payment

retainer for final fees that accrue at the very end of the relationship.

(14-07)

---

[1] *See* N.Y. State 570 n. 1.

[2] *See* DR 2-110(A)(3) ("A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.").

[3] *See* DR 9-102(A)(lawyer may not commingle client funds on property with his or her own).

[4] N.Y. State 570

[5] See, .e.g., N.Y. State 599 (1989)( discussing nonrefundable minimum fee provisions); N.Y. State 693 (1997); N.Y. State 764 (2003).

[6] *See Matter of Aquilo*, 162 A.D.2d 58, 560 N.Y.S.2d 583 (4th Dep't 1990) ("Moneys advanced by clients for disbursements need not, unless expressly agreed, but held in trust and may be placed in a general account."); N.Y. City 2002-2.

[7] *Dowling v. Chicago Options Associates, Inc.,* ___N.E.2d ___, 2007 WL 1288279, at *7 (Ill., May 3, 2007) ("we recognize advance payment retainers as one of three retainers available to lawyers and their clients").

[8] *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985); see N.Y. State 599 ("The essence of the matter is clarity").

[9] DR 9-102(c)(3) requires a lawyer to "[m]aintain complete records of all funds, securities, and other properties of a client or third person coming into possession of the lawyer and render appropriate accounts to the client or third person regarding them."

[10] DR 9-102(c)(4) (requiring a lawyer to "pay or deliver to the client or third person as requested by the client or third person the funds, securities or other properties in the possession of the lawyer which the client or third person is entitled to receive").

[11] *See* DR 2-106(c)(2)(b) (prohibiting use of a nonrefundable fee clause in a domestic relations matter); *Matter of Cooperman*, 83 N.Y.2d 465, 633 N.E.2d 1069, 611 N.Y.S.2d (1994) (holding that the payment of a nonrefundable fee for specific services, in advance and irrespective of whether professional services are actually rendered, is per se violative of public policy).

[12] *See, e. g., Dowling*, ___N.E.2d at ___, 2007 WL 1288279, at *8 ("Paying the lawyer a security retainer means the funds remain the property of the client and may therefore be subject to the claims of the client's creditors. This could make it difficult for the client to hire legal counsel. Similarly, a criminal defendant whose property may be subject to forfeiture may wish to use an advance payment retainer to ensure that he or she has sufficient funds to secure legal representation.").

[13] *See* 22 NYCRR Part 1215 (engagement letters are to include, among other things, an [e]xplanation of attorney's fees to be charged, expenses and billing practices").

[14] *See* DR 2-110(A)(3); DR 9-102(C)(4); N.Y. State 570.




Opinion  570 - 6/7/85  (37-84)      Topic:  Fee for legal services,
                                             advance payment;
                                             client, funds of; trust
                                             account.

                                    Digest:  Fees paid to lawyer in ad-
                                             vance of services, refundable
                                             to the extent not earned, are
                                             not client funds and need not
                                             be deposited in trust ac-
                                             count; any interest earned
                                             on fee advances may be re-
                                             tained by lawyer; upon term-
                                             ination of employment, lawyer
                                             must promptly return to client
                                             unearned portion of fee paid
                                             in advance.

Clarifies N.Y. State               Code:  DR 2-110(A); DR 9-102
532 (1981)

## QUESTIONS

(1)  Must a lawyer deposit advance payment of legal fees
in a trust account as funds of a client, when such payments are
refundable to the extent not earned?

(2)  Is a lawyer prohibited from depositing advance
payments of legal fees in a trust account as funds of a client?

(3)  Must a lawyer remit to the client interest earned on
advance payments of legal fees?

## OPINION

A lawyer has adopted the common practice of receiving
from a new client advance payment of legal fees expected to be
earned in the course of the representation.  To the extent that the
fees thus advanced are not earned, in whole or in part, during the
representation, the lawyer agrees to return them to the client.[1]

---
[1]  Although commonly referred to as a "retainer," such an advance
payment of legal fees that is not earned until legal services are
performed and that is refundable to the extent not earned should be
distinguished from the "classic retainer" or "general retainer"
more common in earlier times.  Such a retainer is a payment to the
lawyer for being available to the client in the future and for

(footnote continued)

The lawyer assumes that these advance fee payments are not client funds and that they are not required to be deposited in a client trust account, although it has been the lawyer's practice to deposit them in a trust account nevertheless. The lawyer asks whether she may retain any interest earned on these advance fee payments.

The answer to this inquiry turns upon whether the lawyer is correct in the assumption that advance payments of legal fees are not client funds and are not required to be deposited in a client trust account pursuant to DR 9-102(A). If, contrary to the lawyer's assumption, the fee advances are client funds, it is clear that any interest earned on them belongs to the client and not the lawyer. E.g., ABA 348, at 4-6 (1982); N.Y. State 532 (1981); Nassau County 84-2 (1984); cf. N.Y. City 79-48 (1980).

We conclude that advance payments of legal fees need not be considered client funds and need not be deposited in a client trust account, and that any interest earned on fee advances may therefore be retained by the lawyer. Of course, the lawyer is obliged promptly to return any portion of the fee advance that is not earned in rendering legal services. DR 2-110(A)(3). If the lawyer treats advance payments of fees as the lawyer's own (and therefore retains any interest earned on them), it follows that the lawyer may not deposit the fee advances in a client trust account, as this would constitute impermissible commingling. On the other hand, the lawyer may agree to treat advance payments of legal fees as client funds and deposit them in a client trust account; in that event any interest earned on the funds while in the client trust account must be remitted to the client.

_____

(footnote continued from previous page)
being unavailable to the client's opponents, and is earned upon receipt. See generally Baranowski v. State Bar, 24 Cal. 3d 153, 164 n.4, 593 P.2d 613, 618 n.4, 154 Cal. Rptr. 752, 757 n.4 (1979); Greenberg v. Remick & Co., 230 N.Y. 70, 75, 129 N.E. 211, 212 (1920); Conover v. West Jersey Mortgage Co., 96 N.J. Eq. 441, 451, 126 A. 855, 859 (1924); Bright v. Turner, 205 Ky. 188, 191, 265 S.W. 627, 628 (1924); Union Surety Co. v. Tenny, 200 Ill. 349, 353, 65 N.E. 688, 689 (1902); Severance v. Bizallion, 67 Misc. 103, 106, 121 N.Y.S. 627, 629 (App. T. 1st Dep't 1910); Jacobson v. Sassower, 113 Misc. 2d 279, 281, 452 N.Y.S.2d 981, 983 (Civ. Ct. N.Y. Co. 1982), aff'd, 122 Misc. 2d 862, 474 N.Y.S.2d 167 (App. T. 1st Dep't (1983); H. Drinker, Legal Ethics 172 (1953).

### (1) Must Fee Advances Be Deposited in a Trust Account as Client Funds?

DR 9-102(A) provides:

All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

1. Funds reasonably sufficient to pay bank charges may be deposited therein.

2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

Lawyers frequently come into possession of the funds and property of others in a wide variety of situations. They may receive the proceeds of a settlement or judgment, a distribution from an estate or trust, or funds to be distributed upon closing of a real estate conveyance or sale of a business, to mention but a few examples. Such funds clearly are not the property of the lawyer, even though in some circumstances the lawyer's fee may be payable out of them or the lawyer may have a lien upon them to secure payment of a fee.

DR 9-102(A) is an expression of the lawyer's duty, in common with all fiduciaries, to preserve the identity of property belonging to others and not to commingle others' property with the lawyer's own. E.g., Restatement (Second) of Agency §§ 381-82 1207, 1334-35 (1957). Even though DR 9-102(A) by its terms is applicable only to the funds and property of a client, lawyers nevertheless are legally and ethically required to observe the same duty of segregation with respect to the property of third parties. E.g., In re Lurie, 113 Ariz. 95, 98, 546 P.2d 1126, 1129 (1976); Worth v. State Bar, 17 Cal. 3d 337, 341, 551 P.2d 16, 18 (1976); In

re Kramer, 92 Ill. 2d 305, 310, 442 N.E.2d 171, 173 (1982); In re
Gallop, 85 N.J. 317, 426 A.2d 509 (1981); N.Y. City 82-8 (1983).

        DR 9-102(A) parallels the normal common law rule against
commingling, to which specific reference is made in the drafters'
notes:

> [C]ommingling is committed when a client's
> money is intermingled with that of his attorney
> and its separate identity lost so that it may
> be used for the attorney's personal expenses or
> subjected to claims of his creditors. . . .  The
> rule against commingling was adopted to provide
> against the probability in some cases, the
> possibility in many cases, and the danger in
> all cases that such commingling will result in
> the loss of clients' money.

ABA Code of Professional Responsibility DR 9-102 n.10 (1969),
quoting Black v. State Bar, 57 Cal. 2d 219, 225-26, 368 P.2d 118,
122 (1962).

        Textually, it appears that the drafters of the Code of
Professional Responsibility did not consider advance payments of
fees to be client funds necessitating their deposit in a trust
account.  DR 9-102(A) makes no explicit reference to advance fee
payments.  The Code does make explicit reference to advance fee
payments in DR 2-110(A)(3), which requires that any unearned fee
advance be promptly refunded upon termination of the representation;
it does not require that the advance be deposited in a trust
account until earned.  Indeed, DR 2-110 treats fee advances and
client property as different things.  It provides specifically
in DR 2-110(A)(2) for the return of all client property to the
client upon withdrawal from employment, and then provides
separately for the refund of any unearned fee advance in
DR 2-110(A)(3).

        Nor is there any suggestion in any of the Code's numerous
provisions dealing with legal fees or client funds that advance
payments of legal fees are deemed client funds to be deposited in a
trust account.  See generally DR 2-103(C)-(D), 2-106, 2-107, 2-
110(A)(3), 3-102, 4-101(C)(4), 5-103(A), 5-106(A); EC 2-8, 2-15 to
-25, 2-32, 9-5.

        Further it strains the normal meaning of words to
interpret the phrase "funds of clients" as embracing advance legal
fees paid to the lawyer.  Although the lawyer receiving an advance
fee payment has a legal and ethical obligation to render the
services agreed upon and to refund any unearned portion of the fee

advanced, it does not follow that the advance remains client property until earned. Normally, when one pays in advance for services to be rendered or property to be delivered, ownership of the funds passes upon payment, absent an express agreement that the payment be held in trust or escrow, and notwithstanding the payee's obligation to perform or to refund the payment. The lawyers who drafted the Code should not lightly be assumed to have overlooked these fundamental principles in choosing the language of DR 9-102(A).

We are also mindful that the very reason that many lawyers require advance fee payments in the first place is so that they will not be subject to a client's refusal to pay for legal services after they are rendered. If fee advances were required to be deposited in a client trust account, it would follow that this purpose of requiring advance payment could be easily defeated by a client who, after services are rendered, disputes a justly earned fee. Under DR 9-102(A)(2), the disputed portion of the fee would have to be retained in the client trust account, and would not be available to the lawyer, until the dispute was resolved.[2]

Our conclusion that legal fees paid in advance need not be considered client funds and therefore need not be deposited in a client trust account is supported by some, albeit a minority, of the ethics committee opinions that have considered this question. D.C. 113 (1982), 110 Daily Washington L. Rptr. 2772 (1982), digested in Lawyers' Man. Prof. Cond. 801:2306 (ABA/BNA)(1984); Fla. 76-27 (1976), Fla. Bar Comm. on Professional Ethics, Selected Opinions 88 (1977), indexed in Maru's Digest No. 10867 (Supp. 1980); Md. 83-62 (1983), digested in Lawyers' Man. Prof. Cond. 801:4330 (ABA/BNA)(1984).

We recognize that our conclusion is contrary to the majority of opinions by other ethics committees that have addressed the issue, which would require that advance payments of legal fees be deposited in a client trust account and retained there until earned. Ind. 4-1977, 21 Res Gestae 402 (1977), indexed in Maru's Digest No. 11061 (Supp. 1980); Mass. 78-11, 63 Mass. L. Rev. 231 (1978), indexed in Maru's Digest No. 11441 (Supp. 1980); Ore. 251

---

[2] Of course, even if fees paid in advance are deposited in a lawyer's general account, a client could still dispute, justly or unjustly, whether the fee was earned. The difference is that the lawyer would not be deprived of all use of the funds pending resolution of the dispute, a result that the lawyer and client bargained for at the outset of the representation in agreeing to advance payment of the fee.

(1973), indexed in Maru's Digest No. 9812 (Supp. 1975);[3] Tex. 391
(1978), 41 Tex. B.J. 322 (1978), indexed in Maru's Digest No. 12749
(Supp. 1980); Va. 186-A (1981); San Francisco Inf. 1973-14 (1973),
indexed in Maru's Digest No. 10669 (Supp. 1980). For the reasons
set forth above, we decline to follow these opinions.[4]

Based on the foregoing, we must clarify the dictum in
N.Y. State 532, at 3-4 (1981), which refers to "advances for costs,
expenses or fees not yet earned," among other things, and states:
"Such funds should, of course, be kept in an identifiable client
account," citing DR 9-102(A). Insofar as this dictum states that
advances for costs and expenses must be kept in a client trust
account, it is inconsistent with DR 9-102(A), which specifically
exempts "advances for costs and expenses." To the extent this
dictum would impose the same requirement upon advances for legal
fees, it is contrary to our analysis set forth above.

### (2) May Fee Advances Be Deposited in a Trust Account as Client Funds?

As seen from the above analysis, the Code does not
require a lawyer to treat advance payments of legal fees as client
funds. Nevertheless, we recognize that many lawyers consider it
more appropriate to treat advances for unearned fees as client
funds until the fees are earned through services rendered. We
conclude that DR 9-102(A) does not prohibit lawyers from agreeing
with their clients to treat fee advances as client funds and
depositing them in a client trust account. Where a lawyer agrees
to treat advance fee payments in this manner, all of the require-
ments of DR 9-102 applicable to client funds and trust accounts
would govern. These include the prohibition against withdrawing
any portion of the lawyers' fee that is disputed by the client,
DR 9-102(A)(2), and all of the detailed accounting, recordkeeping,

---

[3] Ore. 251 cites as support Ore. 205 (1972), indexed in Maru's
Digest No. 9766 (Supp. 1975). However, Ore. 205 was withdrawn on
December 15, 1972. Maru's Digest at 444 (Supp. 1975).

[4] We are also aware that a view contrary to that adopted here
is taken in the textual portion of the Lawyers' Manual On Pro-
fessional Conduct, 45:104-05 (ABA/BNA)(1984). The textual
material relies on some of the ethics committee opinions cited
above and also relies heavily on State v. Hilton, 217 Kan. 694,
538 P.2d 977 (1975). We do not agree with the statements in that
textual material as to what the court said or held in State v. Hilton.

and reporting requirements of DR 9-102(B) and of the applicable Appellate Division rules,[5] with which all lawyers should be familiar.

Absent an agreement to treat an advance fee payment as client property, it would be inappropriate for the lawyer to deposit advance fees in a client trust account, as this would constitute commingling prohibited by DR 9-102(A). Further, once a lawyer agrees to treat a fee advance as client property, the lawyer is bound by that agreement and all of its consequences.[6]

### (3)   Who Earns Interest on Fee Advances?

If a lawyer does not agree to treat a fee advance as client property, the lawyer may use the money as the lawyer chooses (except that the lawyer may not deposit it in a client trust account), subject only to the requirement that any unearned fee paid in advance be promptly refunded to the client upon termination of the employment. DR 2-110(A)(3). In that case, any interest earned on the advance payment of fees would belong to the lawyer.

If the lawyer agrees to treat an advance fee payment as client property, it follows that any interest earned on it must be reported and remitted to the client. E.g., ABA 348, at 4-6 (1982); N.Y. State 532 (1981); Nassau County 84-2 (1984); cf. N.Y. City 79-48 (1980).

### Conclusion

For the reasons stated, and subject to the qualifications set forth above, the questions posed are answered in the negative.

-----------

---

[5]   22 NYCRR §603.15 (1st Dep't); 22 NYCRR §691.12 (2d Dep't); 22 NYCRR §§1022.5, 1022.7 (4th Dep't).

[6]   We do not consider whether or under what circumstances a lawyer's receipt of fee advances may constitute income subject to taxation.