Christopher L. Perkins (*pro hac vice*)
**Eckert Seamans Cherin & Mellott, LLC**
919 East Main Street, Suite 1300
Richmond, VA 23219
Telephone: (804) 788-9636
Facsimile: (804) 698-2950
Email: cperkins@eckertseamans.com

James W. Anderson (9829)
Landon S. Troester (18567)
**Clyde Snow & Sessions, P.C.**
201 South Main Street, #2200
Salt Lake City, Utah 84111
Telephone/Facsimile: (801-322-2516
Email: jwa@clydesnow.com
      lst@clydesnow.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re: | Chapter 11 |
| VOBEV, LLC, | Case No. 24-26346 |
| Debtor. | Honorable Joel T. Marker |

**STOLLE EUROPE'S LIMITED OBJECTION TO BID PROCEDURES MOTION**

Stolle Europe Ltd. ("**Stolle Europe**"), creditor and party-in-interest, by counsel, respectfully submits this Limited Objection ("**Objection**") to the Debtor's Motion Pursuant To Sections 105, 363 And 365 Of The Bankruptcy Code For Entry Of An Order (I) Approving The Bidding Procedures, Including The Debtor's Entry Into The Stalking Horse Apa, The Sale Timeline, And The Form And Manner Of Notice Thereof; (II) Approving The Debtor's (A) Sale Of All Or Substantially All Of The Debtor's Assets Free And Clear Of All Liens Other Than Assumed Liabilities And (B) Assumption And Assignment Of Certain Executory Contracts And

1

Unexpired Leases To The Successful Bidder; And (III) Granting Related Relief ("**Bid Procedures Motion**") (Dkt. No. 58) and in support thereof states as follows:

## PRELIMINARY STATEMENT

Stolle Europe is a company based in Carlisle, United Kingdom, that specializes in the engineering, design, manufacture, sale, installation, and service of aluminum canning equipment and parts. Beginning in 2021, Stolle Europe, and its parent company, Stolle Machinery Co., LLC ("Stolle US")(Stolle Europe and Stolle US shall be collectively referred to as "Stolle") entered into a commercial transaction with the Debtor whereby Stolle designed, manufactured, and installed what the Debtor describes as its "state-of-the art custom production and filling facility" which "produces and fills tens of millions of aluminum beverage cans per year for some of the most well-known beverage companies in the world." Boyko Declaration at ¶7 (Dkt. No. 23). Despite its contractual obligations to do so, the Debtor has not paid for and owes Stolle Europe in excess of $9 million. Notably, the terms and conditions of the parties' contract governing Stolle Europe's provision of certain equipment to the Debtor provide that there is **no** transfer of title until full payment of all fees and expenses for Stolle's services. In this case, it is **undisputed** that the Debtor has not paid Stolle Europe roughly $9 million for "End Module" equipment (the end caps of aluminum cans are manufactured separately from the body of the can) for a period of nearly two years. As such, the title to that equipment remains property of Stolle Europe, title has not transferred to the Debtor, and such equipment is not property of the estate. It is axiomatic that the Debtor may not sell assets which the Debtor does not own. Stolle Europe therefore objects to the Bid Procedures Motion, to the extent it seeks to establish procedures to sell Stolle's Europe's equipment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. In or around 2021, the Debtor undertook to construct a new canning facility. To that end, Stolle Europe and the Debtor entered into that certain NEW DWI Can Line Contract dated November 2, 2021 ("**Contract**"), attached hereto as **Exhibit 1**. Generally, the Contract provides that Stolle Europe will manufacture and sell to the Debtor the equipment necessary for the Debtor to produce "Beverage Ends" – the ends or caps of aluminum cans which are affixed to the can body after it is filled ("**End Module Equipment**"). Simultaneously, the Debtor contracted separately with a different company for the sale of the equipment necessary for the canning line – or the body of the can[1].

2. Among other terms, the Contract provides that:

    a. Stolle Europe shall supply certain equipment to the Debtor's Salt Lake City plant as detailed in Chapter 01 Scope of Work.

    b. The Debtor will pay Stolle Europe an aggregate total price of $25,124,000 of which $18,511,400 was assigned to the cost of the production and shipment of the Equipment. *See* Chapter 02 Price.

    c. The Debtor further agreed to pay the $18,511,400 for the Equipment upon the occurrence of certain milestones pursuant to a schedule detailed in Chapter 03 Terms of Payment. The bulk of the payment (60%) was to be paid "at shipment of each machine from [Stolle's] manufacturing site."

---

[1] Ultimately, the Debtor was unsatisfied with the party with whom it contracted for the canning line equipment, cancelled that contract, and entered into separate purchase orders with Stolle US, for replacement canning line equipment. That relationship is separate and apart from the Contract which forms the basis of Stolle Europe's Limited Objection – although to be clear, the Debtor also owes Stolle US over $5 million with respect to the canning line equipment sale.

3

d.  Most notably, the parties agreed that "[t]itle to each item of the Systems shall pass to Buyer immediately upon payment in full of the portion of the Total Price, and all associated costs and charges required hereunder." Chapter 07 Documents; Transfer of Title; 7.2.1.

3. The Debtor timely met its payment obligations with respect to the first two milestones by paying 15% at contract signing, and 15% on March 1, 2022.

4. Beginning in February 2023, and continuing through February 2024, Stolle Europe shipped the End Module Equipment from its manufacturing site in Carlisle, United Kingdom to the Debtor's Salt Lake City, Utah, facility, and the Debtor has been in possession of it ever since. Despite its obligations under the Contract, the Debtor failed to make the required 60% milestone payment, which amount is still outstanding.

5. A summary of the amounts unpaid by the Debtor to Stolle Europe is attached hereto as **Exhibit 2**.

6. The Debtor filed its chapter 11 petition on December 9, 2024 (Dkt. No. 1).  Among its top 30 creditors, the Debtor listed Stolle Europe and Stolle US, collectively, as the second and third highest, with a total amount owed in excess of $15 million (Dkt. No. 3).

7. On December 10, 2024, the Debtor filed the Bid Procedures Motion seeking, among other things the sale of certain assets.  Paragraph 1 of the Bid Procedures Motion includes the following broad definition of the Assets to be sold: "all or substantially all of its assets, including any and all rights, claims, and causes of action, and all of the issued and outstanding equity interests of certain non-debtor foreign entities".

8. While the End-Module Equipment is not specifically identified among the Assets to be sold, out of an abundance of caution, Stolle Europe files this Limited Objection to protect its ownership rights in the End-Module Equipment. To be clear, Stolle Europe does not object to the sale of any assets actually owned by the Debtor.

**ARGUMENT**

9. The Debtor failed to pay substantial amounts owed to Stolle Europe for the End Module Equipment described above. As such, the Debtor does not have title to such End Module Equipment, which remains Stolle Europe's property. Because the Debtor does not own this asset, it may not sell it.

10. While section 541 of the bankruptcy code defines property of the estate, it is state law which determines the nature and extent of a debtor's interest in property. *See Butner v. United States*, 440 U.S. 48, 55 (1979).

11. Without conceding that the Uniform Commercial Code ("**UCC**") applies to this hybrid sale/services transaction, a review of the applicable UCC provisions is instructive. Section 70A-2-401(1) and (2) of the Utah UCC provide:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 70A-2-501), and **unless otherwise explicitly agreed** the buyer acquires by their identification a special property as limited by this act. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the chapter on Secured Transactions (Chapter 9a, Uniform Commercial Code - Secured Transactions), **title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.**
>
> (2) **Unless otherwise explicitly agreed,** title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is

to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading:
(a)     if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but
(b)     if the contract requires delivery at destination, title passes on tender there.

Utah Code §70A-2-401 et. seq. (emphasis added).

12.     Hence, Utah UCC permits parties to agree upon the timing of transfer of title. While the default rules under the UCC are that title passes upon contract identification and/or delivery, in this case, the parties "otherwise explicitly agreed" that title would not pass until payment in full, which has not occurred.

13.     Utah courts have held that "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987). "[S]ophisticated business parties are charged with knowledge of the terms of the contracts they enter into"; as a consequence, such parties are "not permitted to show that [they] did not know [a contract's] terms, and in the absence of fraud or mistake [they] will be bound by all its provisions, even [if they have] not read the agreement and do not know its contents." *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 28, 245 P.3d 184.

## RESERVATION OF RIGHTS

14.     Stolle is actively engaged with the Debtor regarding the issues raised in this Limited Objection, and reserves the right to supplement this Limited Objection in connection with the sale process and/or following the outcome of the proposed auction.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Stolle Europe, Ltd. objects to the Bid Procedures Motion, on the limited basis described herein, and requests that the Court deny any aspect of the Sale that attempts to sell property owned by Stolle Europe, Ltd.

Dated: January 2, 2025

Respectfully submitted,

**Clyde Snow & Sessions, P.C.**

*/s/ James W. Anderson*
James W. Anderson
Landon S. Troester

**Eckert Seamans Cherin & Mellott, LLC**

*/s/ Christopher L. Perkins*
Christopher L. Perkins

*Counsel for Stolle Europe Ltd.*

**CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (CM/ECF)**

I hereby certify that on the 2nd day of January 2025, I caused a copy of the foregoing **STOLLE EUROPE'S LIMITED OBJECTION TO BID PROCEDURES MOTION** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users:

- **James W. Anderson**  jwa@clydesnow.com, gmortensen@clydesnow.com
- **Megan K Baker**  baker.megan@dorsey.com
- **Daniel B. Besikof**  dbesikof@lowenstein.com
- **Joseph M.R. Covey**  jcovey@parrbrown.com, calendar@parrbrown.com;lstumpf@parrbrown.com
- **Michael S. Etkin**  metkin@lowenstein.com
- **Gregg M. Galardi**  gregg.galardi@ropesgray.com, nova.alindogan@ropesgray.com;Eric.Schriesheim@ropesgray.com
- **Arnold L. Graff**  agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net;jpowell@wrightlegal.net
- **Michael K. Green**  mike.k.green@gmail.com
- **Michael R. Johnson**  mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Melanie Jones-Cannon**  mjonescannon@rqn.com, docket@rqn.com;ecasaday@rqn.com
- **David H. Leigh**  dleigh@rqn.com, ASanchez@rqn.com;docket@rqn.com
- **Austin C Nate**  anate@rqn.com, docket@rqn.com;arollins@rqn.com
- **Bruce S. Nathan**  bnathan@lowenstein.com, elawler@lowenstein.com;mpapandea@lowenstein.com;cgauvin@lowenstein.com
- **Mark A. Nickel**  mnickel@grsm.com, sgomez@grsm.com,VLS_SLCSupport@grsm.com,asoto@grsm.com,mstevens@grsm.com
- **Christopher L. Perkins**  cperkins@eckertseamans.com
- **Mark C. Rose**  mrose@mbt-law.com, markcroselegal@gmail.com
- **Brian M. Rothschild**  brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- **Jeffrey Weston Shields**  jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- **Landon S. Troester**  lst@clydesnow.com, rcondos@clydesnow.com
- **United States Trustee**  USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**  waterman.steven@dorsey.com, bingham.karen@dorsey.com,steven-waterman-9367@ecf.pacerpro.com
- **Melinda Willden tr**  melinda.willden@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachell

e.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

I further certify that the parties below were served by first class mail, postage prepaid:

**Charles A. Dale**
Proskauer Rose, LLP
One International Place
Boston, MA 02110-2600

**FTI Consulting, Inc.**
999 17th Street
Suite 700
Denver, CO 80202

**Carolyn M. Gauvin**
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**Houlihan Lokey Capital, Inc.**
245 Park Avenue
20th Floor
New York, NY 10167

**Vincent Indelicato**
Proskauer Rose, LLP
Eleven Times Square
New York, NY 10036-8299

**Matthew Koch**
Eleven Times Square
New York, NY 10036-8299

**Kroll Restructuring Administration LLC**
1 World Trade Center, 31st Floor
New York, NY 10007

**Sarah S. Mattingly**
Dinsmore & Shohl LLP
101 S. Fifth Street
Suite 2500
Louisville, KY 40202

**Michael Papandrea**
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**Ropes & Gray LLP**
1211 Avenue of the Americas
New York, NY 10036

**Eric P Schriesheim**
Ropes & Gray LLP
191 North Wacker Drive
Chicago, IL 60606

                                        */s/    James W. Anderson*